Paul C. Ulrich
*Pro Se* Plaintiff
Four Seasons Place, #2036
8 Finance Street, Central, Hong Kong
Paul_Ulrich@aya.yale.edu
Tel. (852) 6271-9384

7 April 2014

Via Electronic Case Filing ("ECF") and email c/o Judge's Chambers to:

The Honorable Michael H. Dolinger, U.S.M.J.,
U.S. District Court for the Southern District of New York

**Subject:  Reply to Defendants' Response to Plaintiff's Letter-Motion to Allow Discovery to Start in Ulrich v. Moody's Corporation *et al*, 1:13-CV-00008-VSB-MHD**

Dear Judge Dolinger:

In accordance with ECF Rule 13.1, this reply letter addresses points raised in Defendants response of 4 April 2014 to Plaintiff's letter-motion (ECF 40) asking Your Honor to allow discovery to start.

**Trial Judge's Discretion**

None of the cases cited by the Defendants' response (ECF 44) is controlling: the Federal Rules of Civil Procedure and the few appellate decisions on the topic make clear that it is up to the discretion of the individual trial judge to decide when and how to allow discovery to proceed based on the circumstances of the particular case.

**A Phased Approach to Discovery**

The Plaintiff is preparing an Objection to Your Honor's Report & Recommendation ("R&R") that points out in detail to the Honorable Presiding Judge Broderick the material errors and omissions from the factual record that have led to what Plaintiff respectfully submits are Your Honor's incorrect inferences. Once the Parties have filed objections and any responses, Your Honor or Judge Broderick, can determine what types of discovery may proceed, in what stages, and for which claims.

The Plaintiff has, for example, prepared a request for production of documents totaling fifty separate line items. Your Honor could review this list to determine which of the requests would be appropriate and when. As an individual *pro se* plaintiff, who hopes to be employed, handling discovery reviews and answering requests while working full time could become overwhelming unless it occurs in a gradual manner through phases.

**Elapsed Time if No Discovery Starts**

Defendants have not argued that a <u>*start*</u> to discovery would be burdensome, particularly as they long ago must have finished their own internal investigation into the claims and should have readily available many of the documents that Plaintiff will request.

By the time Judge Broderick receives the Plaintiff's request for a *de novo* review of many aspects of Your Honor's R&R, affecting each of the causes of action, and a likely response from Defendants, more than 17 months will have passed since the Plaintiff first filed his Complaint. If the Honorable Judge Broderick then needs as much time as Your Honor did, over two years will have elapsed without discovery even beginning, not to mention any appeal that either Party might make.

In *Anti-Monopoly, Inc. v. Hasbro, Inc. No. 94-2120, 1996 WL 101277, *3 (S.D.N.Y. March 7, 1996.*), a case cited by Defendants in their response ("Def. Res."), at 1, the court referred to when a stay would be appropriate, "This is especially so where the stay is for a "short" period of time and the opposing party (here, plaintiff) will not be prejudiced by the stay." Likewise in a second case cited by Def. Res., *id.*, *Lewittes v. Cohen, No. 03-189, 2004 WL 1171261, at *1, 9 (S.D.N.Y. May 26, 2004)*, the stay lasted two months, from March to May. Google did not have a third "published" case listed in Def. Res. at 2, *Chesney v. Valley Stream Union Free Sch. District No. 24, 236 F.R.D. 113 (E.D.N.Y.)*, but it had some citations from it noting the appropriateness of phased discovery and another, saying ""[I]t is well settled that the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay."

**Informal Requests that Defendants Refused in the Past**

Defendants question what requests Plaintiff has made of them. They forget that before their retaliation began in earnest, their compliance officers in New York and Hong Kong had promised to share with the Plaintiff the results of their internal investigation that began after his call to their hotline on 15 May 2012, and for which he volunteered abundant documentation. During the OSHA investigation, they also refused to turn over any emails or ESI that Plaintiff had asked the investigator to obtain to document Defendants' position statement. Moreover, it was also only through an FOIA request to the EEOC that the Plaintiff saw exhibits that Defendants had submitted, including the materially false one on pay, cited in ECF 34, which would have misled the EEOC to conclude that discrimination in compensation had ended.

**Plaintiff's Mitigation of Damages**

Defendants assert that putting Plaintiff out of work with the taint of a lingering lawsuit has not damaged his career prospects. It is not for Plaintiff to prove that he has sought to mitigate the damages that Defendants inflicted. Suffice it to say that he has been actively seeking employment throughout the past year and a half. Choosing to proceed *pro se*, has also mitigating damages to Defendants by eliminating any future payout required of them for attorneys' fees that Plaintiff could have incurred under the federal-law claims.

Respectfully submitted,

s/ Paul C. Ulrich

Paul C. Ulrich
*Pro Se* Plaintiff

cc: Joseph A. Nuccio, Esq., Counsel for Defendants (via email)