Paul C. Ulrich, *Pro Se* Plaintiff
Four Seasons Place, #2036
8 Finance Street, Central, Hong Kong
Paul_Ulrich@aya.yale.edu
Tel. (852) 6271-9384

2 July 2015

Via Electronic Case Filing ("ECF") to:

The Honorable Vernon S. Broderick, U.S.D.J.,
U.S. District Court for the Southern District of New York

Subject: Defendants' Privilege Log; Request to Upload Moody's Discovery Responses
Ulrich v. Moody's Corporation *et al*, 13-CV-00008 (VSB)

Dear Judge Broderick:

In accordance with ECF 96, Your Honor's June 30th order, I list the entries to Moody's privilege log to which I object. Before doing so, I also respectfully correct some misstatements in your order, for the record, and address the point of whether Moody's additional objections to individual document requests can shield the logging of allegedly "privileged" documents.

**Corrections to Your Order of ECF 96 (Respectfully Submitted)**

(I) As shown in ECF 88 (admitted RFA #384), ECF 28 (at 20, n. 12), and ECF 41 (at 61, n. 19), the EEOC notified Moody's of my <u>unperfected</u> charge on 28 June 2012; Moody's received my <u>perfected</u> (notarized) EEOC charge on 20 July 2012, based on, *inter alia,* Moody's privilege log.

(II) Your Honor's order repeats Moody's misleading statements that "Plaintiff has already received as part of Defendants [*sic*] production calendar entries for Brian Cahill. I will not order Defendants to produce duplicative screenshots of those entries." I received one, or at most two, such entries and only for Cahill's meetings that I organized in 2010, not for Cahill's meetings with other Hong Kong staff in 2008 and 2009, which is what I requested. Screenshots for this non-produced information, as described in ECF 94 are, therefore, not duplicative and are the most efficient means of providing such impeaching facts to the court and jury (*cf* ECF 82, at 2).

(III) Your Honor did not address why you thought my 20 interrogatories, which you never viewed, were excessive nor Moody's failure to respond to most of them (ECF 94 at 2). By this point, I ask only for an answer to #20, which, if granted, would obviate the injustice of an evasive verification that hides names of sources with personal knowledge who provided information for the so-called "responses". I also ask permission to upload via ECF Moody's responses to my interrogatories so that the court can see just how evasive they are.

(IV) At the teleconference of 8 May 2015, Your Honor told me to narrow my requests for West's documents, which I did via a May 11th email to Mr. Nuccio and repeated in ECF 94, at 3. Contrary to Mr. Nuccio's contention of ECF 95, at 3, the number of responsive West emails pertaining to me was not "voluminous". Such emails from West tallied hardly more than a dozen over five years, and there were none in the period of interest throughout 2012. How could this person, who—Moody's admits—evaluated my performance, keep so silent about it?

(V) My ECF 94 didn't raise additional issues; it repeated, narrowed, and further clarified requests to compel that I already made but which Your Honor's orders either did not address or ignored.

**Moody's Used the Guise of Additional Objections to Not Provide Privilege-Log Entries**

The limited space of (joint) letters and your individual practice's disallowance of attachments to such letters prevented Your Honor from seeing the actual additional objections to my document requests for which Moody's claimed privilege. To shield itself from providing the required log entries, all Moody's needed to do, according to its non-controlling Philip Morris case-law citation of ECF 95, at 2, was to cite any additional objections, however improper and unwarranted. Thus, for its 62 assertions of privilege to my 134 requests for documents, not once did Moody's object *solely* on privilege. Philip Morris, *id*, says "[If the additional] objection was not made in good faith as Rule 26(g) requires (Fed.R.Civ.P. 26(g)), the court may then decide whether the party should be deemed to have waived the privilege." I, therefore, ask permission to upload via ECF Moody's four sets of responses and objections to my four sets of document requests so that Your Honor can see that Moody's boilerplate objections to the original requests were improper and no excuse for not providing appropriate log entries with accompanying facts. To save time, Your Honor could focus on the specific, individual numbered requests identified in ECF 94, at 2-3: DRs #3, 10, 34, 80 (West's communications about me), 94, 98, 102, 104, 108, and 111.

**List of Privilege Log's Entries (Updated as of 25 June 2012) in Need of *In-Camera* Review**

In misconstruing Upjohn for the instant case, Mr. Nuccio in ECF 95, at 2, claims to have already provided the facts by throwing up the absurd statement of his having produced "*thousands* of pages of e-mails regarding the feedback Forrey received" [emphasis added]. According to produced documents, during the PIP, Forrey received emailed comments about my performance (1) from Cahill, (2) from Cahill's toady Gary Lau (whom I will also call as an adverse witness), and (3) a provably false, suborned statement from a single junior analyst Dhruv (AC, ¶ 84-85). Rather than "thousands", "*three*" is closer to the true amount, with the handful above that number coming only from Cahill—the very person I had formally accused of age discrimination, harassment, and retaliation just weeks before the PIP started.

Below, as per your order, I identify by date (mm/dd/yy), transmission time (hr: min) in UTC[1], and basis for your *in-camera* review twelve of Moody's 135 privilege-log entries:

See ECF 94, at 2, regarding mismatch of email title with "subject" of perfected EEOC charge:
7/20/12 (13:51) Kazanjian-Nuccio "FW: Securities Trading Program Position Profile Details"

See ECF 91, at 2; ECF 94, at 2, re legal-violation exception* to in-house-counsel privilege:
7/26/12 (16:45) Forrey-Kazanjian email with attachment of draft interim PIP
7/26/12 (17:48) Kazanjian-Forrey email with attachment of draft interim PIP
7/26/12 (18:11) Forrey-Kazanjian email on draft interim PIP

---

1   UTC = Universal Time Code, also known as Greenwich Mean Time (EST + 8 hours), the time designation that Moody's says it uses for the first entry of any email chains that it produced via discovery. Moody's didn't tell me it used UTC until my deposition, near discovery's end.

<u>See ECF 76, at 1, regarding a party's entitlement to see facts of pre-litigation work product:</u>
8/10/12 (21:08) Forrey-Ong email with attachment on draft PIP extension

<u>See ECF 78, at 1, re legalistic email threatening termination; ECF 76, at 1, facts of work product:</u>
8/31/12 (2:35) Liberman-Forrey email

<u>See ECF 94, at 2, re legal-violation exception* to in-house-counsel privilege:</u>
9/10/12 (13:39) Forrey-Liberman email with attachments

<u>See ECF 76, at 1, re entitled to facts, legal-violation exception* to attorney-client privilege</u>:
9/26/12 (14:56) redactions from Stratton notes of Nuccio call on my return-to-work "agreement"

<u>See ECF 78, at 1; ECF 82, at 2-3; ECF 94, at 2, re fraud exception to in-house-counsel privilege</u>:
10/16/12 (21:33) Forrey-Liberman email with attachment of draft PIP (conclusion) form
10/17/12 (10:22) Forrey-Liberman email with attachment of draft PIP (conclusion) form
10/17/12 (13:57) Liberman-Forrey email with attachment of draft PIP (conclusion) form
10/24/12 (16:22) Forrey-Liberman, "PIP Conclusion Form".

* On the legal-violation exception to attorney-client privilege, see (1) <u>United States v. International Bhd. of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it," and (2) <u>Colton v. United States</u>, 306 F. 2d 633, 637 (2d Cir. 1962) (To prevail on an assertion of the attorney-client privilege, the party invoking the privilege must show that: "… the communication [is] … not ... for the purpose of committing a … tort." See also, <u>Duplan Corporation v. Deering Milliken, Inc</u>., 397 F. Supp. 1146, 1172 (D. South Carolina), which cites, *inter alia*, <u>United States v. Bob</u>, 106 F. 2d 37, 40 (2d Cir, 1939) in stating, "Communications made before the fact of or during the commission of a crime, fraud, or tort between an attorney and persons within the control group of the corporate client are *not* protected by the attorney-client privilege.) [Emphasis in the original].

The attorney-client communications sought above under the legal-violation exception all occurred just one or two days <u>*before*</u> each of multiple instances of torts committed by Moody's of (i) defamation and violation of data privacy and human-resource policies on 27 July 2012, (ii) suspension without pay on 12 September 2012, and (iii) changing of contractual terms under duress on 27 September 2012. No privilege protects such communications but shields only communications that come *after* the torts (<u>Duplan</u>, *id*.). For similar reasons, no privilege protects the crafting of the fraudulent and final PIP conclusion form in the week leading up to my wrongful termination.

                                         Respectfully submitted,

                         /s/ <u>Paul C. Ulrich</u>

                         Paul C. Ulrich
                         *Pro Se* Plaintiff

<u>cc</u>: Joseph A. Nuccio, Esq. (via ECF, email)